TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2569/1785
        Facsimile: (213) 894-0142/0141
        E-mail: Victor.Rodgers@usdoj.gov
                Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>$240,000.00 IN U.S. CURRENCY AND MISCELLANEOUS PRECIOUS ITEMS,<br><br>             Defendants. | Case No. 2:21-cv-07155<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) & (C)<br><br>[FBI] |

        Plaintiff United States of America brings this claim against

defendants $240,000.00 in U.S. Currency and Miscellaneous Precious

Items (collectively, the "defendants"), and alleges as follows:

JURISDICTION AND VENUE

        1.   The government brings this in rem forfeiture action

pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

<u>PERSONS AND ENTITIES</u>

4.    The plaintiff in this action is the United States of America.

5.    The defendants in this action were seized by law enforcement officers on or about March 22, 2021, at U.S. Private Vaults, which is located at 9182 Olympic Boulevard in Beverly Hills, California, and consist of $240,000.00 and miscellaneous precious items seized from box number 4203 linked to Zen Alldredge.

6.    The defendant currency is currently in the custody of the United States Marshals Service in this District while the defendant miscellaneous precious items are in the custody of the FBI in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.    The interests of Zen Alldredge may be adversely affected by these proceedings.

<u>BASIS FOR FORFEITURE</u>

<u>Background Regarding U.S. Private Faults</u>

8.    U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers.  By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9.    The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric

Identification; No ID Required."  USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name.  For your privacy and the security of your assets in our vault, **the less we know the better**."  This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10.  USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV.  The posting asserted:

> Banks require clients to provide their social security
> number and a photo identification as a condition for
> renting a safe deposit box.  Your information is then filed
> in the bank's central data system.  This information can be
> easily accessed by government agencies (such as the IRS) or
> attorneys armed with court orders. If no one is aware you
> have a safe deposit box, the contents (your gold) are much
> safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

11.  In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

> As government chartered institutions, banks are now
> required to file "suspicious activity reports." . . . U.S.

3

Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order. By marketing services in this fashion, some persons who ultimately became USPV customers, were attracted by the advertisements because USPV's safe deposit box storage facilities offered them a much safer place to store their illegal criminal proceeds, unlike law-abiding banks, so as to eliminate their fear of apprehension by law enforcement and in promotion of their illegal activities.

12.  Further, and in order to shield customers from having law enforcement uncover their illegal activity, USPV encouraged its customers pay their box rental fees in cash.  In addition, USPV charged customers significantly higher prices than those charged by major banks, because USPV offered something which legitimate banks do not: anonymity, a place to store illegally obtained cash, tips and assistance in avoiding law enforcement and a willingness to look the other way with regard to all types of criminal conduct.  And one of USPV's owners has gone so far as to brag about bringing to USPV individuals selling marijuana and other drugs illegally, based on the owner's connections, by marketing USPV as a safe place for those criminal actors and potential USPV customers to store their ill-gotten gains.

13.  Not surprisingly, because USPV's business model is designed to appeal and cater to criminals, USPV has repeatedly been used by criminals to store criminal proceeds.  Over the years, the contents of specific boxes at USPV have been forfeited because they are the proceeds of criminal activity.  For example, on July 1, 2019, officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes.

1    Records from the Employment Development Department (the "EDD"), which

2    is the California agency to whom employers must report wages earned

3    by their employees, showed Beaver had no legitimate employment

4    income.  In addition, Beaver's phones revealed evidence of drug

5    trafficking activity, and the in excess of $1.6 million funds were

6    forfeited as proceeds of unlawful activity.

7         14.  On April 21, 2019, a victim was kidnapped in San Diego and

8    brutally tortured in a warehouse, where the victim was hit with

9    sticks and baseball bats; stripped naked; hit with a hammer on the

10   victim's toes; and set on fire.  Allan Newman was arrested and

11   charged with kidnapping for ransom, attempted murder, torture and

12   aggregated mayhem relative to the beating.  The victim had been

13   employed by a group of people who were engaged in distributing

14   counterfeit marijuana vaping cartridges, and the group believed the

15   victim had stolen a suitcase full of cash, which a vape cartridge

16   customer had left at the warehouse.  A portion of the funds had been

17   placed by the victim's ex-wife in a safe deposit box at USPV, which

18   the ex-wife retrieved and used to pay the victim's ransom.

19        15.  On March 6, 2018, officers seized $101,080 and 26 gold bars

20   from Vincent Ramos' USPV box.  Ramos was the CEO of a company that

21   facilitated the importation, exportation and distribution,

22   internationally, of wholesale quantities of cocaine, heroin and

23   methamphetamine.  The currency and gold bars were forfeited, and

24   Ramos was indicted and pleaded guilty to Racketeering and Drug

25   Trafficking, in the Southern District of California.  See United

26   States v. Ramos, Case No. 18cr1404-WQH.

27        16.  In September 2016, officers seized $592,450 and $435,190,

28   respectively, from two USPV boxes of Mikhail Malykhin, an individual

who was the leader of an identity theft/computer intrusion fraud ring.  He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and altering the codes to cash out the debit cards.  Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud.  See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17.  In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes.  However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation.  The funds were forfeited as criminal proceeds. See United States of America v. Lebowitz, Central District of California Case No. 17cr-0053-CAS.

18.  On October 28, 2015, officers seized $500,000, 22 gold bars and 15 gold coins from the USPV box of Cyrus Irani, who was the master bookmaker and head of an illegal gambling organization that operated both internet and traditional bookmaking operations, and engaged in money laundering.  He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges. The assets found in Irani's box were forfeited as criminal proceeds.
/ / /

The Property At Issue In This Case

19.   The assets seized from the box at issue in this case are examples of persons storing assets from their illegal activity at USPV, as a result of USPV's advertisements, marketing efforts and other transactions and activities over the web, on-line and in the mails, designed to induce persons to rent boxes at USPV to hide their property.  The assets seized represent the proceeds of criminal activity and were involved in money laundering activity, which therefore renders them subject to forfeiture.

20.   A criminal seizure warrant has been obtained for the $240,000.00 in currency and the miscellaneous precious items found in Alldredge box number 4203, pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).  In issuing the warrant, the Magistrate Judge found that there was probable cause to believe that the funds represented traceable proceeds or were involved in money laundering, thereby rendering the defendants subject to forfeiture.  The crimes for which the defendants are associated include wire fraud and money laundering, which have resulted to losses to one or more victims.  There is an ongoing federal investigation pertaining to this matter.

FIRST CLAIM FOR RELIEF

21.   Plaintiff incorporates the allegations of paragraphs 1-20 above as though fully set forth herein.

22.   Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

1
SECOND CLAIM FOR RELIEF

2      23.  Plaintiff incorporates the allegations of paragraphs 1-20

3 above as though fully set forth herein.

4      24.  Based on the above, plaintiff alleges that the defendant

5 currency constitutes property involved in multiple transactions or

6 attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i)

7 or (a)(1)(B)(i), or property traceable to such property, with the

8 specified unlawful activity being a violation of 18 U.S.C. § 1341.

9 The defendants are therefore subject to forfeiture pursuant to 18

10 U.S.C. § 981(a)(1)(A).

11
THIRD CLAIM FOR RELIEF

12      25.  Plaintiff incorporates the allegations of paragraphs 1-20

13 above as though fully set forth herein.

14      26.  Based on the above, plaintiff alleges that the defendant

15 currency constitutes property involved in multiple transactions or

16 attempted transactions in violation of 18 U.S.C. § 1957(a), or

17 property traceable to such property, with the specified unlawful

18 activity being a violation of 18 U.S.C. § 1341.  The defendants are

19 therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

20      WHEREFORE, plaintiff United States of America prays:

21      (a)  that due process issue to enforce the forfeiture of the

22 defendants;

23      (b)  that due notice be given to all interested parties to

24 appear and show cause why forfeiture should not be decreed;

25      (c)  that this Court decree forfeiture of the defendants to the

26 United States of America for disposition according to law; and

27 / / /

28 / / /

8

1      (d)   for such other and further relief as this Court may deem

2 just and proper, together with the costs and disbursements of this

3 action.

4 Dated: September 6, 2021      TRACY L. WILKISON
                           Acting United States Attorney

5                            SCOTT M. GARRANGER
                           Assistant United states Attorney

6                            Chief, Criminal Division

7

8                                   /s/
                           VICTOR A. RODGERS

9                            MAXWELL COLL
                           Assistant United States Attorneys

10                            Asset Forfeiture/General Crimes
                           Sections

11                            Attorneys for Plaintiff
                           UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>VERIFICATION</u>

I, Lynne Zelhart, hereby declare that:

1.   I am a Special Agent with the Federal Bureau of Investigation.

2.   I have read the above Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 5, 2021 at Los Angeles, California.


/s/ *Lynne Zelhart*
Lynne Zelhart